WYNN v. THE STATE.

No. 10320. December 12, 1934.

*W. A. Dampier, S. P. New,* and *R. Earl Camp,* for plaintiff in error.

*M. J. Yeomans, attorney-general, J. A. Merritt, solicitor-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general, W. H. White, Burch & Daley, E. J. Clower,* and *Hugh McMillan,* contra.

BECK, P. J. Julia Wynn was indicted for murder, it being charged that she feloniously shot and killed Mrs. J. E. Burns. A demurrer to the indictment was overruled, and exceptions pendente lite were filed. Upon the trial the jury returned a verdict of guilty, with a recommendation. The defendant's motion for new trial was overruled, and she excepted.

■ Counsel for the plaintiff in error insist that the evidence was not sufficient to authorize the verdict of guilty. With this contention this court can not agree. We quote a part of the testimony given by witnesses for the State:

Witness Rowland: "I was about twenty feet from her when she was shot. At the time of the shooting, Mrs. Burns [the decedent] wasn't doing anything to Mrs. Wynn as I know of. Mrs. Burns was going towards the [Dexter] post-office like she was going in, and Mrs. Wynn was coming out. Mrs. Wynn shot Mrs. Burns three times. I don't know exactly where Mrs. Burns was shot, but I imagine it was in the side, because she was kind of sideways to Mrs. Wynn. I didn't see Mrs. Burns with a weapon of any kind. Mrs. Burns didn't have a weapon in her hand. Mrs. Wynn drove past the post-office door just as I was crossing the railroad, and stopped and went in the post-office, and when Mrs. Burns came across the street they met right in front of the door. . . I just happened to see Mrs. Wynn when she took her pistol out of her pocket-book and shot Mrs. Burns. It was done quick. . . Of course I saw Mrs. Wynn when she threw her pistol on Mrs. Burns, but just as she did that she fired. I didn't testify at the last trial that the first two shots attracted my attention. All three of them attracted my attention. It happened in pretty quick succession. There was no intermission between the shots as I could tell. I saw Mrs. Burns kind of throw her hands up when Mrs. Wynn threw the gun on her. She did not put her hands to her breast. I could see both of her hands. She was not facing me, but I could see both of her hands from the back."

Witness Braddy: "I know Mrs. Julia Wynn. I knew her on or about the 7th day of October, 1933. I saw her that day. I saw her park in front of the post-office and go in. I saw Mrs. Wynn shoot Mrs. J. E. Burns three times on that day. I was sitting on that concrete rescue about two feet of the post-office at the time of the shooting. Mrs. Burns started in the post-office, and Mrs. Wynn stepped out, and Mrs. Burns backed back a step, and Mrs. Wynn opened fire on her. She fired twice, and Mrs. Burns wheeled and she got the third shot on the wheel. When Mrs. Burns stepped back she threw up her hands about this high [indicating]. Just as I looked up the firing took place. If Mrs. Burns had any weapons, I didn't see them. If she was trying to do anything to Mrs. Wynn at the time of the shooting, I didn't see her. I was in about two feet of them when the firing started. There were three shots fired. Mrs. Burns didn't say a word to Mrs. Wynn. If Mrs. Wynn said anything to her, I didn't hear it. I would say that Mrs.

Burns was in about four feet of Mrs. Wynn when the shooting occurred."

Witness Waites: "I know Mrs. Julia Wynn. I knew her on or about the 7th day of October, 1933. I was in Dexter on the afternoon of the killing. I was between the post-office and Mrs. Spell's store at the time of the shooting. Mrs. Wynn shot Mrs. Burns. I heard three shots, but I didn't see the first shot. When I saw Mrs. Burns she was already falling. She slightly raised her hands when she was shot. . . I didn't see Mrs. Wynn when she went to the post-office. When I first saw her she was shooting Mrs. Burns. I saw Mrs. Burns before the shooting, coming across the street. She was crossing the ditch between the sidewalk and the street, and I stepped on the concrete slab to let her pass. I didn't notice anything unusual about her movements. I didn't see anything in her hands."

The defense introduced contradictory evidence as to certain of the facts; but in view of the positive evidence for the State, the guilt of the defendant was a question for the jury, and the court did not err in overruling the ground of the motion based upon the insufficiency of the evidence.

■ The indictment in this case is in the following language: "The grand jurors selected, chosen, and sworn for the County of Laurens, to wit [omitting their names], in the name and behalf of the citizens of Georgia charge and accuse Mrs. Julia Wynn of the county and state aforesaid with the offense of murder. For that the said Mrs. Julia Wynn on the 7th day of October in the year of our Lord nineteen hundred and thirty-three, in the county aforesaid, with force and arms one Mrs. Julia Wynn, in the peace of God and said State then and there being, then and there unlawfully, feloniously, wilfully, and of her malice aforethought did kill and murder by shooting the said Mrs. J. E. Burns with a certain pistol which the said Mrs. Julia Wynn then and there held, and giving to the said Mrs. J. E. Burns then and there a mortal wound, of which mortal wound the said Mrs. J. E. Burns died. And so the jurors aforesaid upon their oath aforesaid do say that the said Mrs. J. E. Burns she the said Mrs. Julia Wynn in manner and form aforesaid unlawfully, feloniously, wilfully, and of her malice aforethought did kill and murder, contrary to the laws of said State, the good order, peace, and dignity thereof." The court is

evenly divided on the question as to whether or not the court below erred in overruling the demurrer to this indictment, Chief Justice Russell, and Justices Atkinson and Hutcheson being of the opinion that the trial court erred, and Justices Beck, Gilbert, and Bell being of the contrary opinion; and the judgment sustaining the indictment is therefore affirmed by operation of law.

 The rulings stated in headnotes 3, 4, 5, and 6 require no elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

GILBERT, J., concurring specially. The indictment in this case is a modification of the form used in England and in this State before the adoption of the first Code. In the hope that it may be useful, attention is called to the very simple and model form of indictment for murder found in *Thomas* v. *State*, 71 *Ga*. 44, 47. The use of this form of indictment minimizes inadvertent errors. In that case the court, referring to the indictment, said: "The allegation is the very substance and essence of murder as defined in section 4320" (Penal Code of 1910, § 60).